# BEFORE THE
## UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

---

IN RE: WINDSOR WINDOW COMPANY d/b/a
WINDSOR WINDOWS AND DOORS, and
WOODGRAIN MILLWORK, INC.
PRODUCT LIABILITY LITIGATION

MDL DOCKET NO. 2688

---

**DEFENDANTS WINDSOR WINDOW COMPANY D/B/A WINDSOR WINDOWS AND DOORS, AND WOODGRAIN MILLWORK, INC.'S RESPONSE TO PLAINTIFF CATHY L. RITCHIE'S MOTION TO TRANSFER ACTIONS TO THE EASTERN DISTRICT OF WISCONSIN**

ARTHUR, CHAPMAN, KETTERING,
SMETAK & PIKALA, P.A.
Michael P. North (MN #230716)
500 Young Quinlan Building
81 South Ninth Street
Minneapolis, MN 55402-3214
P: (612) 339-3500
F: (612) 339-7655
mpnorth@ArthurChapman.com

*Attorney for Defendants Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc.*

## Table of Contents

INTRODUCTION.................................................................................................................1

FACTS............................................................................................................................2

  I.   The Windsor Window Company. ...............................................................2

  II.   The Plaintiffs' Class Action Bar Tries to Find Claims Against Windsor, Largely Unsuccessfully....................................................................................................4

ARGUMENT...................................................................................................................6

  I.   Transfer is Not Appropriate. ...................................................................6

    A.   It is Unclear That There Is Any Common Issue of Fact, But It Is Clear That Unique Issues Predominate...............................................................7

    B.   Transfer Would Not Make the Cases More Convenient for the Parties and Witnesses..............................................................................................11

    C.   The Subject Cases Will Be Most Justly and Efficiently Resolved in Their Present Venues.........................................................................................12

    D.   There Are Few Actions on this Docket, and the Number is Likely to Decrease Rather than Increase; the Cases Moreover Are Simple Ones. .....................13

  II.   If Transfer Is Granted, Judge Norton in the District of South Carolina is the Best Option.....................................................................................................14

CONCLUSION ..............................................................................................................16

**Cases**

*Adler v. Pella Corp.*, Case No. 2:14-cv-00562, ECF 26 (Mar. 21, 2014)........................8

*Alexander v. Pella Corp.*, 2:14-cv-00540, ECF 36 (Apr. 21, 2015)............................9

*Anderson v. Pella Corp.*, 2:14-cv-00552, ECF 48 (Jan. 7, 2015)..............................9

*Andrews v. Pella Corp.*, Case No. 2:14-cv-00539, ECF 72 (Oct. 15, 2014);
    82 (Dec. 17, 2014); 88 (Jan. 13, 2015); 99 (Oct. 27, 2015) ..............................9

*Arnold .v Pella Corp.*, Case No. 2:14-cv-000449, ECF 20 (Marc. 28, 2014).....................8

*Davias v. Windsor* (Wisconsin), No. 2:15-cv-01041-LA........................... 1, 3, 4, 5, 11

*Dilly v. Pella Corp.*, No. 2:14-CV-03307-DCN, 2016 WL 53828,
    at *1 (D.S.C. Jan. 4, 2016)...............................................................15

*In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*,
    840 F. Supp. 2d 1193, 1200-01 (D. Minn. 2012)............................................12

*In re Fotomat Franchisee Litig.*, 394 F. Supp. 798, 799 (J.P.M.L. 1975) ....................13

*In re Ins. Brokerage Antitrust Litig.,* MDL No. 1663, 2009 WL 1874085, at *4
    (D.N.J. June 30, 2009)....................................................................12

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
    No. MDL 08-1999, 2010 WL 4386552 (E.D. Wis. Oct. 28, 2010) ..............................16

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
    832 F. Supp. 2d 74, 77 (D. Me. 2011)......................................................14

*In re Mattel, Inc., Toy Lead Paint Products Liab. Litig.*,
    528 F. Supp. 2d 1367, 1369 (U.S. Jud. Pan. Mult. Lit. 2007) ............................14

*In re: Highway Accident in Fulton Cty., Ohio, on Aug. 2, 2009*,
    829 F. Supp. 2d 1374 (U.S. Jud. Pan. Mult. Lit. 2011).....................................7

*In re: MI Windows & Doors, Inc., Products Liab. Litig.*,
    857 F. Supp. 2d 1374, 1375 (U.S. Jud. Pan. Mult. Lit. 2012)...........................13, 16

*In re: Mortgage Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379,
    (Mem)-1380 (U.S. Jud. Pan. Mult. Lit. 2014)..............................................14

*In re: Ne. Contaminated Beef Products Liab. Litig.*, 856 F. Supp. 2d 1354,
    (Mem)-1355 (U.S. Jud. Pan. Mult. Lit. 2012)...........................................10, 12

*In re: Pella Corp.*, 996 F. Supp. 2d at 1383 ...................................... 13, 15, 16

*In Re: Pella Corporation Architect and Designer Series Windows Marketing,
    Sales Practices, and Products Liability Litigation*, MDL No. 2514 ("*Pella*"), .........8, 9, 13

*In re: Spray Polyurethane Foam Insulation Products Liab. Litig.*,
    949 F. Supp. 2d 1364 (U.S. Jud. Pan. Mult. Lit. 2013)....................................10

*In re: Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
    949 F. Supp. 2d 1369, 1370 (U.S. Jud. Pan. Mult. Lit. 2013).............................16

*Kotys and George v. Windsor* (Illinois), No. 1:15-cv-5343 ...................... 1, 3, 4, 5, 11

*Lewis v. Pella Corp.*, 2:14-cv-00549, ECF 39 (Nov. 18, 2014),
    44 (Feb 16, 2014).........................................................................9

*Marcial v. Coronet Ins. Co.*, 122 F.R.D. 529, 531 (N.D. Ill. 1988)
    *aff'd,* 880 F.2d 954 (7th Cir. 1989).....................................................13

*Naparala v. Pella Corp.*, 2:14-cv-03465, ECF 31-1 at 1 (Nov. 9, 2015);
    35-4 (Ex/ 14) SGH Report at 2 (Dec. 15, 2015); 43-6 – 43-9 (same) (Dec. 28, 2015).............8

*Naparala v. Pella Corp.*, No. CV 2:14-MN-00001-DCN, 2015 WL 9412532,
    at *1 (D.S.C. Dec. 22, 2015)..............................................................15

*Ritchie v. Windsor* (South Carolina), No. 9:14-cv-04734-SB ..................... 1, 3, 4, 5, 11

*Romig v. Pella Corp.*, Case No. 2:14-cv-00433, ECF 95-1 at 3 (Nov. 9, 2015);
    99 at 3 (Nov. 20, 2015)........................................................................................9
*Schiller and Libsack v. Windsor* (Minnesota), No. 15-1932(DSD/FLN).................... 1, 3, 4, 5, 11
*Schwartz v. Pella Corp.*, 2:14-cv-00556, ECF 34 (Nov. 18, 2014), 39 (Mar. 2, 2015).................9
*Singh v. Pella Corp.*, Case No. 2:14-cv-00640, ECF 46 (Mar. 31, 2014) ...................................8
*Various Plaintiffs v. Various Defendants*, No. MDL 875, 2012 WL 1431223,
    at *5 (E.D. Pa. Apr. 23, 2012)........................................................................12
*Walters v. Pella Corp.*, Case No. 2:14-cv-00544, ECF 53 (July 20, 2015) ................................8

**Other Authorities**
2006 Criterium Engineers Construction Quality Survey .......................................................3, 10
Audet & Partners LLP website ...................................................................................................1
Baillon Thome website ..............................................................................................................1
Class Action Lawsuits Center website ......................................................................................1
ClassAction.org website ...........................................................................................................1
Elizabeth Chamblee Burch, *Remanding Multidistrict Litigation*,
    75 La. L. Rev. 399, 409 (2014)..........................................................................12
Better Business Bureau website,
    *http://www.bbb.org/iowa/business-reviews/windows-installation-and-service/windsor-*
    *windows-and-doors-in-west-des-moines-ia-22000027* ............................................2
MI Windows Article, http://www.lexislegalnews.com/articles/1284/mi-windows-mdl-judge-
    awards-7-9m-to-homeowners-attorneys................................................................4
Legend Windows website, http://www.windsorlegend.com/ ......................................................3
Manual for Complex Litigation, Fourth § 20.131, p. 220 (2004)................................................6
Morgan & Morgan website ........................................................................................................1
Parker Waichman LLP website .................................................................................................1
Seeger Weiss LLP, "Windsor Pinnacle Select Windows Under Investigation for Faulty Seals and
    Water Damage" (article dated Oct. 6, 2014) ...........................................................1

**Rules**
Fed. R. Civ. P. 23(a)(1) ...........................................................................................................12

**Code**
28 U.S.C. § 1407(a) ...................................................................................................................6

# INTRODUCTION

Plaintiff Cathy L. Ritchie's ("Ritchie") motion to transfer should be denied because the cases that are its subject are simple and few and transfer will complicate and delay rather than simplify and streamline them.

For more than a year,[1] the plaintiffs' class action bar has actively tried to drum up product liability cases against the defendants, through no fewer than *seven* websites.[2] Despite these efforts, the lawyers have evidently located fewer plaintiffs than they have web sites -- only *six* households for four cases *nationwide*[3] that presently claim to have leaky windows manufactured by the Windsor Window Company ("Windsor"). Further, the defendants have

---

[1] *See, e.g.*, Seeger Weiss LLP, "Windsor Pinnacle Select Windows Under Investigation for Faulty Seals and Water Damage" (article dated Oct. 6, 2014), *located at* http://www.seegerweiss.com/news/windsor_pinacle_select_windows_under_investigation_for_f aulty_seals_and_water_damage, *last accessed on* January 8, 2016. In addition, the following Parker Waichman LLP website has been searching for plaintiffs since at least June 4, 2014: http://www.yourlawyer.com/topics/overview/pinnacle-select-windows, last accessed on January 8, 2016.

[2] (1) Audet & Partners LLP, http://audetlaw.com/investigations/windsor-pinnacle-select-windows-lawsuit-investigation/, *last accessed on* January 8, 2016; (2) Baillon Thome, https://www.baillonthome.com/cases/pinnaclewindows, *last accessed on* January 8, 2016; (3) ClassAction.org, http://www.classaction.org/windsor-windows, *last accessed on* January 8, 2016; (4) Class Action Lawsuits Center, http://classactionlawsuitcenter.com/headlines-view/windsor-pinnacle-select-windows-class-action-lawsuit/, *last accessed on* January 8, 2016; (5) Morgan & Morgan, http://www.forthepeople.com/class-action-lawyers/windsor-windows-lawsuit/, *last accessed on* January 8, 2016; (6) Parker Waichman LLP, http://www.yourlawyer.com/topics/overview/pinnacle-select-windows, *last accessed on* January 8, 2016; (7) Seeger Weiss LLP, http://www.seegerweiss.com/news/windsor_pinacle_select_windows_under_investigation_for_f aulty_seals_and_water_damage, *last accessed on* January 8, 2016.

[3] *Kotys and George v. Windsor* (Illinois), No. 1:15-cv-5343; *Schiller and Libsack v. Windsor* (Minnesota), No. 15-1932(DSD/FLN); *Ritchie v. Windsor* (South Carolina), No. 9:14-cv-04734-SB; *Davias v. Windsor* (Wisconsin), No. 2:15-cv-01041-LA.

Rule 12 motions with respect to each plaintiff that, if granted, will leave only two express warranty claims in two cases for routine discovery and decision.

The four cases involve two different Windsor product lines and while all allege water intrusion issues caused by a defect, they are vague in their allegations of the defect that has caused the water intrusion. It is, therefore, too early to determine whether there are common issues of disputed fact. What is clear now is that transfer will impede these cases, not make them more efficient. Accordingly, transfer should be denied.

If, however, the Panel deems transfer appropriate, defendants respectfully urge that the cases be transferred to The Honorable David Norton in the District of South Carolina. South Carolina has developed an expertise in building products defect Multidistrict Litigation ("MDLs"), and Judge Norton, in particular, has unique and extensive experience managing window defect MDLs. If an MDL is formed, therefore, the District of South Carolina would be the best forum for the efficient handling of the cases.

## FACTS

### I. The Windsor Window Company.

Windsor manufactures and sells windows and doors to distributors who sell them to contractors and homebuilders. Declaration of Rick McMillen, January 14, 2016 ("McMillen Decl.") ¶ 3.[4] Windsor has an "A+" rating from the Better Business Bureau, the best possible rating. *See* http://www.bbb.org/iowa/business-reviews/windows-installation-and-service/windsor-windows-and-doors-in-west-des-moines-ia-22000027, last accessed on January 14, 2016. From January 2004 through the beginning of December 2015, Windsor manufactured and sold about 1.8 million windows in its Pinnacle product line. McMillen Decl. ¶ 5. These are

---

[4] Defendant Woodgrain Millwork, Inc. ("Woodgrain") is Windsor's parent company. Woodgrain does not manufacture or sell windows.

the windows that the plaintiffs in the *Koty*, *Schiller*, and *Davia* cases allege that they own. *See Id.* ¶ 4. During the same period, Windsor manufactured and sold about 39,000 windows in its Legend Hybrid line, the windows that Ritchie owns. *Id.* ¶¶ 4-5.[5]

Windsor has had few complaints about its windows during that same period of time. An over-inclusive review of customer contacts that may relate to leaking issues reveals that only 0.1% of Pinnacle windows have been the subject of such complaints. The corresponding figure for Legend Hybrid windows is only 0.03%. McMillen Decl. ¶ 5. Many of the customer contacts included in these percentages are not about leaking and, even those that are, do not represent evidence of window defects. Rather, they represent customer or distributor contacts where water intrusion was observed but where the underlying cause frequently was faulty installation or homeowner maintenance, not a problem with the window itself. McMillen Decl. ¶¶ 6-7; 2006 Criterium Engineers Construction Quality Survey ("Criterium Report") (filed as an attachment to this memorandum), p. 1 ("Water intrusion continues to be the number one problem with poor installation of roofs and windows the primary cause.").

In short, Windsor's windows are high quality products that have generated few complaints over many years (indeed, well below market norms).[6]

---

[5] Ritchie's Legend Hybrid windows contain PVC and are "Impact" windows specially designed to withstand hurricanes. *See Ritchie*, No. 9:14-cv-04734-SB, Doc. 42-2, ¶¶ 4-7; http://www.windsorlegend.com/, *last visited on* January 14, 2016; McMillen Decl. ¶ 4. The remaining plaintiffs have Pinnacle (aluminum clad) windows. *Kotys*, No. 1:15-cv-5343, Doc. 30, ¶¶ 1, 75, 84, 95, Doc. 37-1, ¶¶ 3-4; *Schiller*, No. 15-1932(DSD/FLN), Doc. 1, ¶¶ 2, 45, 56, Doc. 13, ¶¶ 4-5; *Davias*, No. 2:15-cv-01041-LA, Doc. 1, ¶¶ 3, 58, Doc. 10, ¶¶ 3-4.

[6] *See* 2006 Criterium Engineers Construction Quality Survey ("Criterium Report"). This Report based its survey on data from more than 68 offices, spread across 35 states, which collectively inspect approximately 25,000 homes per year. Criterium Report at 1-2. It found that 14-16% of the homes that it inspected had manufacturing defects in windows, resulting in water leaks through window joints, loose sashes, and air leaks. *Id.* at 5. It further found that the

## II. The Plaintiffs' Class Action Bar Tries to Find Claims Against Windsor, Largely Unsuccessfully.

For many years, plaintiffs' class action lawyers have been bringing putative class action window defect claims against window manufacturers and have experienced some success in generating large fee awards by setting up complex litigation that the manufacturers ultimately settle.[7]

Beginning in at least the middle of 2014, these lawyers began targeting Windsor by actively advertising for homeowners to sue Windsor.[8]  In December 2014, Plaintiff Cathy Ritchie commenced a putative class action against Windsor in the District of South Carolina. *Ritchie v. Windsor* (South Carolina), No. 9:14-cv-04734-SB, Doc. 1.  In 2015, three more cases were commenced against Windsor.  *Kotys and George v. Windsor* (Illinois), No. 1:15-cv-5343; *Schiller and Libsack v. Windsor,* D. Minn. No. 15-1932(DSD/FLN); *Davias v. Windsor* (Wisconsin), No. 2:15-cv-01041-LA.  Each of these plaintiffs commenced suit in his or her local federal district court.  *Ritchie*, No. 9:14-cv-04734-SB, Doc. 39, ¶ 2; *Kotys*, No. 1:15-cv-5343, Doc. 30, ¶ 2; *Schiller*, No. 15-1932(DSD/FLN), Doc. 23-1, ¶¶ 4-5; *Davias*, No. 2:15-cv-01041-LA, Doc. 1, ¶ 5..

The cases represent a total of six households across the U.S. who allege that they have experienced water intrusion in or around their Windsor windows.  The plaintiffs all assert that the water intrusion is caused by a "defect" in the windows, but they are vague (and sometimes

---

windows in 26-28% of the homes that it inspected were improperly installed, resulting in poor operation, water intrusion, wood rot, and mold. *Id.* at 4.

[7] *See, e.g.,* http://www.lexislegalnews.com/articles/1284/mi-windows-mdl-judge-awards-7-9m-to-homeowners-attorneys, *lasted visited on* January 14, 2016 (noting that South Carolina transferee court approved $7,900,000 attorney fee award in *In re: MI Windows & Doors Inc., Prods. Liability Lit.*, MDL No. 2333, No. 12-md-1, D.S.C.).

[8] *See* websites cited in notes 1 and 2 above.

contradictory) in their allegations of what defect they allege. In two of the cases, plaintiffs allege that a lack of proper sealing permits water intrusion problems. *Ritchie*, No. 9:14-cv-04734-SB, Doc. 39, ¶ 25; *Kotys*, No. 1:15-cv-5343, Doc. 30, ¶ 16. In a third, the parties have agreed that plaintiffs may file an amended complaint in which they apparently insist that the defect is *not* a seal problem and take Windsor to task for suggesting that it is. *Schiller*, No. 15-1932(DSD/FLN), Doc. 23-1, ¶ 45 ("[Defendants] were aware Schiller's problem was caused by an inherent design defect in the Windows but represented to Schiller it was a problem with installation of the seals and concealed the Windows' design defect."). In the fourth, the plaintiffs simply do not identify what they think the problem is. *E.g., Davias*, No. 2:15-cv-01041-LA, Doc. 1, ¶ 3.

Windsor has motions to dismiss in all of these cases that, if successful, will leave only two cases with a single express warranty claim in each.[9] These contract claims are simple, straightforward claims that should be resolved after brief discovery, likely on dispositive motions. The cases are pending in courts convenient to the parties (especially plaintiffs) and that are accustomed to hearing the underlying state law claims.

---

[9] The motion to dismiss in the *Davias* case has been fully briefed and is awaiting decision (or a notice of argument). *Davias*, No. 2:15-cv-01041-LA, Docs. 8-9. If granted, this motion will leave only the *Davias'* express warranty claim for further proceedings. Defendants made a complete motion to dismiss in *Ritchie* that will be fully briefed by January 25, 2016. No. 9:14-cv-04734-SB, Docs. 42, 42-1, 46. The initial brief on the motion to dismiss in *Koty*, No. 1:15-cv-5343, Docs. 36-37 has been submitted, but briefing has been stayed until a March 17, 2016 status conference. That motion, if granted, will leave only George's express warranty claim for further proceedings. After submission of Defendants' motion to dismiss in *Schiller*, the parties stipulated to plaintiffs' submission of an amended complaint. The defendants' motion to dismiss will be due two weeks from the filing of the Amended Complaint. No. 15-1932(DSD/FLN), Docs. 23.

# ARGUMENT

The four cases proposed for transfer are too few and too simple to warrant transfer under the 28 USC § 1407 criteria. Ritchie has not met her burden to show that there is a common fact question, but even if she had, individual issues strongly predominate. The convenience of the parties and witnesses will not be served by transfer, because the cases are currently venued close to the plaintiffs' respective homes and in courts no more burdensome for defendants than any transferee court would be. The individual issues unique to each set of plaintiffs are such that placing all cases in one court is not likely to yield significant efficiencies. Taking the cases out of the courts most familiar with the underlying state laws, on the other hand, would be inefficient.

If the Panel is inclined to transfer the cases, however, defendants respectfully suggest that the District of South Carolina and, in particular, Judge Norton, are best suited to efficiently manage the cases.

## I.    Transfer is Not Appropriate.

An action involving one or more common issues of fact may be transferred to a single district for consolidated or coordinated proceedings when the Panel determines that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

Ritchie bears a heavy burden here to persuade the Panel that transfer is appropriate, because there are only four actions pending. There are not likely to be significantly more cases; rather, when Defendants' Rule 12 motions are decided, there are likely to be only two very simple cases (asserted under different states' laws) remaining. *See* Manual for Complex Litigation, Fourth § 20.131, p. 220 (2004) ("[T]hose advocating transfer bear a heavy burden of

persuasion when there are only a few actions, particularly those involving the same parties and counsel."); *In re: Highway Accident in Fulton Cty., Ohio, on Aug. 2, 2009*, 829 F. Supp. 2d 1374 (U.S. Jud. Pan. Mult. Lit. 2011) ("Where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization.").

A. <u>**It is Unclear That There Is Any Common Issue of Fact, But It Is Clear That Unique Issues Predominate.**</u>

Ritchie's assertion that there are common issues of fact among the four subject cases is premised entirely on her assertion that there is a wide-spread design defect in all Windsor Pinnacle and Legend windows. Putting aside for the moment the fact that the paucity of complaints to Windsor, its distributors, and the Better Business Bureau makes this assertion implausible, it appears from the limited information that the plaintiffs have provided that it is untrue. The plaintiffs in two cases assert that their windows leaked due to improper sealing, and another alleges that Windsor misled him by stating that there was a seal problem when the problem was really something else. It appears to be undisputed therefore that the plaintiffs in the four cases are not alleging a single, common defect.

Without the premise of a defect involving all Windsor Pinnacle and Legend windows, the other questions Ritchie proffers as "common" are, in fact, questions unique to each case. What did Windsor do in the manufacturing of a particular plaintiff's windows? What interactions were there between Windsor and that plaintiff or his or her builder? Are the water intrusion problems caused by a window problem or an installation or maintenance problem?

Windsor is skeptical moreover that the plaintiffs will even continue to assert that there is a common theory of defect after a transfer occurs. Ritchie relies on the Panel's finding in *In Re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices, and*

*Products Liability Litigation*, MDL No. 2514 ("*Pella*"), that "the Section 1407 requirement of common factual questions is satisfied because in the subject actions all plainly allege that the subject windows – whether Architect Series or Designer Series, casement, double hung, single hung, or transom, etc. – are defective in the same ways." (Doc. 1-1 at 4-5, citing JPML 2514 Doc 54). Ritchie is represented by the same Lead Counsel as in *Pella*, yet she has failed to disclose the following facts about *Pella* to the Panel:

- *Pella* Lead Plaintiffs' Counsel, and their experts have, since transfer, admitted that all the windows originally included in the MDL definition in fact do not have "common defects,"[10] as it appears the plaintiffs in this case have already done in their pleadings.

- Of the original 6 cases that the *Pella* plaintiffs argued included allegations of "common defects" which justified the creation of an MDL:

  o In three cases, Plaintiffs voluntarily dismissed their claims in their entirety;[11]

  o In one case, Plaintiffs voluntarily dismissed their class claims (acknowledging that the product defect allegedly at issue was in fact not common) and sought a transfer back to the original jurisdiction;[12]

  o In one case the Plaintiffs voluntarily dismissed all claims for one named plaintiff, and dismissed all class claims for the other;[13] and

---

[10] *Id*. at *Naparala v. Pella Corp.*, 2:14-cv-03465, ECF 31-1 at 1 (Nov. 9, 2015); 35-4 (Ex/ 14) SGH Report at 2 (Dec. 15, 2015); 43-6 – 43-9 (same) (Dec. 28, 2015).

[11] *In Re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2514, United States District Court for the District of South Carolina at *Adler v. Pella Corp.*, Case No. 2:14-cv-00562, ECF 26 (Mar. 21, 2014); *Arnold .v Pella Corp.*, Case No. 2:14-cv-000449, ECF 20 (Marc. 28, 2014); *Singh v. Pella Corp.*, Case No. 2:14-cv-00640, ECF 46 (Mar. 31, 2014).

[12] *Id*. at *Walters v. Pella Corp.*, Case No. 2:14-cv-00544, ECF 53 (July 20, 2015).

o In the final case, the Plaintiff purchased window products that did not share the features alleged to be defective in the other cases.[14]

• Of the four additional "tag along" cases identified by the *Pella* Panel,[15] one was voluntarily dismissed,[16] one was dismissed in its entirety by the transferee court;[17] and two were partially dismissed with motions to dismiss the remaining claims pending.[18]

While it is easy to allege a single "common defect" in windows with admittedly different designs, in *Pella*, the plaintiffs' representations to the Panel of allegations *in every case* of a "common defect" did not turn out to be accurate. Once plaintiffs achieved the creation of an MDL, they abandoned nearly every supposedly "common" claim in the original cases with the sole objective of trying to land on a set of claims with the best chance of obtaining class certification. The *Pella* MDL, in fact, demonstrates that cases of a type similar to the four matters involving Windsor windows can and should be resolved as individual matters, particularly because it appears that the plaintiffs in the Windsor cases are already abandoning a common theory of defect.

---

[13] *Id*. at *Andrews v. Pella Corp.*, Case No. 2:14-cv-00539, ECF 72 (Oct. 15, 2014); 82 (Dec. 17, 2014); 88 (Jan. 13, 2015); 99 (Oct. 27, 2015).

[14] *Id*. at *Romig v. Pella Corp.*, Case No. 2:14-cv-00433, ECF 95-1 at 3(Nov. 9, 2015); 99 at 3 (Nov. 20, 2015).

[15] See JPML, MDL No. 2514, ECF 54 at FN 1.

[16] *In Re: Pella Corporation Architect and Designer Series Windows Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2514, United States District Court for the District of South Carolina at *Anderson v. Pella Corp.*, 2:14-cv-00552, ECF 48 (Jan. 7, 2015).

[17] *Id*. at *Alexander v. Pella Corp.*, 2:14-cv-00540, ECF 36 (Apr. 21, 2015).

[18] *Id*. at *Lewis v. Pella Corp.*, 2:14-cv-00549, ECF 39 (Nov. 18, 2014), 44 (Feb 16, 2014); *Schwartz v. Pella Corp.*, 2:14-cv-00556, ECF 34 (Nov. 18, 2014), 39 (Mar. 2, 2015).

Even if plaintiffs had identified a common fact issue, individual issues of causation, damages, and reliance predominate. The plaintiffs' complaints generally allege state law warranty, fraud, and (in two cases) tort claims. These claims require each plaintiff to show not only that (s)he experienced leaking around his or her windows but also (1) that the leaking was caused by a problem with the window rather than a problem with installation -- the much more common cause of leaking;[19] (2) what defendants represented to each plaintiff, if anything; (3) what each plaintiff reasonably relied upon in purchasing his or her windows; (4) when each plaintiff made a warranty claim; and (5) how defendants responded to the claim. *And* plaintiffs will also need to show what harm they suffered, all of which will be specific to the individual plaintiffs. Where individual issues predominate over a chimerical common issue, transfer should not be ordered. *See In re: Ne. Contaminated Beef Products Liab. Litig.*, 856 F. Supp. 2d 1354, (Mem)-1355 (U.S. Jud. Pan. Mult. Lit. 2012) (denying transfer because, among other things, movants failed to show that common factual issues "contain significant overlapping questions of fact sufficient to warrant centralization of the few involved actions. Individualized issues of causation concerning each plaintiff's injuries appear to predominate among the actions. . . ."); *In re: Spray Polyurethane Foam Insulation Products Liab. Litig.*, 949 F. Supp. 2d 1364 (U.S. Jud. Pan. Mult. Lit. 2013) ("Although these actions share factual questions arising out of allegations that SPF insulation products emit VOCs as a result of one or more defects associated with the product, the Panel is not persuaded that Section 1407 centralization is necessary either to assure the convenience of the parties and witnesses or for the just and efficient conduct of this litigation. On the present record, it appears that individualized facts concerning the chemical composition of the different products, the training and practices of each installer, and the circumstances of

---

[19] Criterium Report, p. 1 ("Water intrusion continues to be the number one problem with poor installation of roofs and windows the primary cause.").

installation at each residence will predominate over the common factual issues alleged by plaintiffs.").

Transfer should not be ordered because whether there is any common issue of fact is doubtful and, regardless, unique issues of causation and damages predominate.

**B.      Transfer Would Not Make the Cases More Convenient for the Parties and Witnesses.**

The cases proposed for transfer have all been brought by plaintiffs in their respective local federal district courts. The plaintiffs' homes were built by local builders and distributed by Windsor's local distributors. *See* McMillen Decl., ¶ 3; *see also Ritchie*, No. 9:14-cv-04734-SB, Doc. 39, ¶¶ 13-14,112; *Kotys*, No. 1:15-cv-5343, Doc. 30, ¶¶ 65-66, 79, 81, 83; *Schiller*, No. 15-1932(DSD/FLN), Doc. 23, ¶¶ 35, 48; *Davias*, No. 2:15-cv-01041-LA, Doc. 1, ¶¶ 55, 57. The evidence is primarily at defendants' manufacturing facilities in Iowa and North Carolina and in the states where the plaintiffs live and have their homes and windows. For plaintiffs and likely third party witnesses (homebuilders and distributors), removing the case to a federal court far from where they live and work and store information will not improve convenience or efficiency.

Both plaintiffs and defendants, moreover, are represented by common counsel across all four cases. . The undersigned and his firm represent defendants in all of the cases, and at least either (and sometimes both) the Bryson firm or the Kohn firm represent plaintiffs in all four cases. *Ritchie*, No. 9:14-cv-04734-SB, Doc. 39 at 23 (Bryson and Kohn); *Kotys*, No. 1:15-cv-5343, Doc. 30 at 32 (Kohn); *Schiller*, No. 15-1932(DSD/FLN), Doc. 23 at 30 (Bryson); *Davias*, No. 2:15-cv-01041-LA, Doc. 1 at 37 (Bryson and Kohn) Given the small number of cases and the commonality of counsel, "informal cooperation among the involved attorneys and courts is both practicable and preferable" to transfer into a multidistrict proceeding. *Contaminated Beef*

*Products Liab. Litig.*, 856 F. Supp. 2d at 1355. And, to date, the lawyers have cooperated well in these matters.

C.   **The Subject Cases Will Be Most Justly and Efficiently Resolved in Their Present Venues.**

The four cases proposed for transfer are each based exclusively on state law claims and are venued in the federal district sitting in the subject state. These judges are uniquely suited among the federal courts to efficiently resolve state law claims. *See* Elizabeth Chamblee Burch, *Remanding Multidistrict Litigation*, 75 La. L. Rev. 399, 409 (2014) ("As transferee judges often admit, they are not the foremost authority on how to apply other states' laws."); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F. Supp. 2d 1193, 1200-01 (D. Minn. 2012) (transferee court observing that "[t]he transferor courts, each of which is familiar with the state law of their respective jurisdictions, are in a better position to assess these [state law] claims. . . . These issues are best addressed by courts in the states where the plaintiffs' claims arose.") (quotation and citation omitted); *Various Plaintiffs v. Various Defendants*, No. MDL 875, 2012 WL 1431223, at *5 (E.D. Pa. Apr. 23, 2012) ("[I]n matters of state law, the transferor court, albeit a federal court, generally is more experienced in the application of the law of the state in which it sits than is the transferee MDL court."); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 1874085, at *4 (D.N.J. June 30, 2009) ("[A]djudication of dispositive motions will also require the application of Missouri state statutory and common law. The Court believes that such a detailed review may best be undertaken by the court that sits in that state and more frequently applies the law that controls Plaintiffs' cases.").

And because the claims in each case are premised on different laws (and apparently different fact issues), there is little risk of inconsistent rulings.[20]

> **D.**     <u>There Are Few Actions on this Docket, and the Number is Likely to Decrease Rather than Increase; the Cases Moreover Are Simple Ones.</u>

While there is no question that Ritchie (represented by the same counsel as the plaintiffs in *Pella*) is trying to re-create the *Pella* and *MI Windows* MDLs here, this case is meaningfully different. Despite significant efforts by plaintiffs, they have only a few cases, less than half the numbers in *Pella* (six constituent actions and four tagalongs)[21] and *MI Windows* (eight actions in eight districts involving different counsel).[22]

And the number of cases is likely to decrease with dismissal orders on the pending Rule 12 motions. Ritchie has offered no evidence or argument about the likelihood of additional actions and in light of the significant evidence that Windsor has a high quality product with few complaints internally or externally, the commencement of new actions seems unlikely. *See In re Fotomat Franchisee Litig.*, 394 F. Supp. 798, 799 (J.P.M.L. 1975) (denying centralization of five

---

[20] Ritchie argues without much analysis that without transfer, there is a risk of overlapping class actions. Ritchie Br., Doc. 1-1, at 3-4. That is, in fact, highly improbable. Based on the facts set forth herein, plaintiffs are unlikely to find enough plaintiffs to populate any class. *See* Fed. R. Civ. P. 23(a)(1) (class must not be certified unless "the class is so numerous that joinder of all members is impracticable"); *Marcial v. Coronet Ins. Co.*, 122 F.R.D. 529, 531 (N.D. Ill. 1988) ("Failure to satisfy the numerosity requirement is, alone, a sufficient ground for denying class certification."), *aff'd*, 880 F.2d 954 (7th Cir. 1989). And, the classes plaintiffs seek are primarily state damages classes. While two of the cases seek nationwide classes, the request is fanciful and, again, the fact that plaintiffs have common counsel in all of the cases, permits coordination among the plaintiffs to avoid duplication and overlapping.

[21] *In re: Pella Corp.*, 996 F. Supp. 2d at 1383, n.1 and Schedule A.

[22] *In re: MI Windows & Doors, Inc., Products Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (U.S. Jud. Pan. Mult. Lit. 2012) ("the litigation has grown to eight actions pending in eight districts involving different counsel.").

actions; observing that "relatively few actions are involved in this litigation and counsel advise us that the filing of additional actions is unlikely.").

The few actions currently pending (half of which are likely to be dismissed in their entirety in the near term) do not justify transfer. *See In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F. Supp. 2d 74, 77 (D. Me. 2011) (ordering remand to transferor courts of four cases presenting "case-specific questions unique to the state law of their respective jurisdictions;" reasoning that "the transferor courts, each of which is familiar with the state law of their respective jurisdictions, are in a better position to assess the parties' state law arguments and their impact on the class certification issue. The Court concludes that the efficiencies of consolidated handling of pretrial matters have reached the point of diminishing returns.").

. Moreover, the subject matter of these cases is simple. Window construction is not rocket science and these matters can and should be efficiently resolved where they were filed. *See In re: Mortgage Indus. Foreclosure Litig.*, 996 F. Supp. 2d 1379, (Mem)-1380 (U.S. Jud. Pan. Mult. Lit. 2014) ("[T]hese actions involve relatively straightforward contractual interpretation questions under different state laws. They are not so complex, nor the accompanying discovery so time-consuming, as to merit centralization.").

Accordingly, defendants respectfully ask that Ritchie's motion for transfer be denied.

## II.   <u>If Transfer Is Granted, Judge Norton in the District of South Carolina is the Best Option.</u>

If the Panel nevertheless determines that transfer is appropriate, Windsor respectfully suggests that transfer should be to Judge Norton in the District of South Carolina where Ritchie filed the first of the four subject actions and which has a great deal of experience with building product -- and, in particular, window -- defect MDLs. *See In re Mattel, Inc., Toy Lead Paint Products Liab. Litig.*, 528 F. Supp. 2d 1367, 1369 (U.S. Jud. Pan. Mult. Lit. 2007) (transferring

to district where first case was filed); *In re: Pella Corp.*, 996 F. Supp. 2d at 1383 ("Selecting the District of South Carolina . . . enables us to assign the litigation to the Honorable David C. Norton, who has been handling the aforementioned MDL No. 2333 [*MI Windows*], which, similar to this docket, involves allegations involving defects in various different windows (albeit windows manufactured by a different entity). In our view, Judge Norton's experience in overseeing MDL No. 2333 is likely to benefit the parties here, and to otherwise facilitate the just and efficient conduct of this litigation.").

.Judge Norton's experience managing window defect MDLs is unique in the country, and he is therefore uniquely suited to assume an MDL of these actions, if ordered. Judge Norton has, in fact, handled the only MDLs against window manufacturers and has done so recently. Judge Norton sits in South Carolina and is familiar with South Carolina law (which governs *Ritchie*), and his recent window defect MDL experience has also allowed him to become conversant with the building products defect laws of Wisconsin (which governs the *Davias*),[23] and Minnesota law (which governs *Schiller and Lisback*).[24]

Windsor anticipates that this might be a good time for another transfer to Judge Norton. *MI Windows* is over, and discovery appears to be complete in the *Pella* actions (summary judgment motions having been made and granted). *See Dilly v. Pella Corp.*, No. 2:14-CV-03307-DCN, 2016 WL 53828, at *1 (D.S.C. Jan. 4, 2016); *Naparala v. Pella Corp.*, No. CV 2:14-MN-00001-DCN, 2015 WL 9412532, at *1 (D.S.C. Dec. 22, 2015) (same). And the Windsor cases are simple and few.

---

[23] *See Naparala,* 2015 WL 9412532.

[24] *See Schwartz v. Pella Corp.*, No. 2:14-CV-00556-DCN, 2014 WL 7264948 (D.S.C. Dec. 18, 2014).

The Eastern District of Wisconsin and the Honorable Lynn Adelman, whom Ritchie recommends to assume a Windsor MDL, on the other hand, have some MDL experience, *see generally In re: Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1369, 1370 (U.S. Jud. Pan. Mult. Lit. 2013) (J. Adelman assigned); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, No. MDL 08-1999, 2010 WL 4386552 (E.D. Wis. Oct. 28, 2010) (J. Adelman), but not with building product defect MDLs. *See In re: Pella*, 996 F. Supp. 2d at 1383 (assigning *Pella* MDL to Judge Norton); *In re: MI Windows & Doors, Inc., Products Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (U.S. Jud. Pan. Mult. Lit. 2012) (assigning *MI Windows* MDL to Judge Norton).

Therefore, if an MDL is ordered, it should be in the District of South Carolina, with Judge Norton.

## CONCLUSION

The cases proposed for transfer are too few and insubstantial to warrant centralization, and the defendants respectfully submit that the Ritchie motion should be denied in its entirety. In the event that the Panel does order transfer, however, defendants respectfully suggest that Judge Norton and more generally the District of South Carolina are the best forum for an MDL concerning alleged window defects, because there is a great deal of experience in that district and especially in Judge Norton in dealing with building product liability cases.

ARTHUR, CHAPMAN, KETTERING,
SMETAK & PIKALA, P.A.


Dated: January 15, 2016         */s/ Michael P. North*
                                    Michael P. North (MN #230716)
                                    500 Young Quinlan Building
                                    81 South Ninth Street
                                    Minneapolis, MN 55402-3214
                                    P: (612) 339-3500
                                    F: (612) 339-7655
                                    mpnorth@ArthurChapman.com

*Attorneys for Defendants Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc.*